UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TYRONE PARKER, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CV-698-CCB |
| NANCY MARTHAKIS, | |
| Defendant. | |

## OPINION AND ORDER

Tyrone Parker, a prisoner without a lawyer, is proceeding in this case "against Dr. Nancy Marthakis in her individual capacity for money damages for failing to provide him constitutionally adequate medical care by not monitoring his sodium levels, resulting in him having a severe adverse reaction to a medication she prescribed in August 2021[.]" ECF 8 at 4. Dr. Marthakis filed a motion for summary judgment. ECF 37. Parker filed a response and Dr. Marthakis filed a reply. ECF 47, 48. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v.*

*Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious;[1] and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

---

[1] Both parties agree Parker had an objectively serious medical need.

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. "In the inadequate medical care context, deliberate indifference does not equate to medical malpractice; the Eighth Amendment does not codify common law torts." *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021) (quotation marks omitted); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("[I]t is important to emphasize that medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference.").

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that

3

the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Dr. Marthakis provides an affidavit and Parker's medical records, which show the following facts: During all relevant times, Parker was enrolled in Indiana State Prison's ("ISP") Chronic Care Clinic to receive regular treatment for his hypertension, a chronic condition where his blood pressure is consistently elevated. ECF 37-1 at 3. In August 2018, Parker was prescribed a medication regimen to treat his hypertension consisting of Hydrochlorothiazide ("HCTZ"), Hydralazine, Lisinopril, and Lopressor. *Id.* at 2. Parker was regularly provided a personal supply of his medications so he could take them daily in his cell rather than come to the infirmary when medication was passed out. *Id.* at 2-3. HCTZ is a diuretic, meaning it helps the body flush out excess fluid and salt. *Id.* Because HCTZ can cause low sodium and other electrolyte imbalances, it is appropriate to monitor the patient's electrolytes, including sodium levels, at least once a year. *Id.* at 2. Between 2020 and 2021, Parker's sodium levels were regularly monitored by laboratory testing every few months and always tested within the normal range between 136 and 145. *Id.* at 3; ECF 37-2 at 107-113. On May 24, 2021, Parker's sodium level measured at a normal rate of 140. ECF 37-1 at 3; ECF 37-2 at 107.[2]

---

[2] Parker asserts the medical records only indicate his medications were refilled on May 24, 2021, and do not show that any lab work was performed on this date. ECF 47 at 4. But contrary to Parker's assertion, the medical records do show that Parker had lab work performed on May 24, 2021. ECF 37-2 at 107.

4

On August 24, 2021, Parker was seen in the nursing unit for complaints of a headache and high blood pressure. ECF 37-1 at 5; ECF 37-2 at 71-74. The nurse recorded that Parker's blood pressure was elevated and that he reported not taking his medication that morning. *Id.* The nurse contacted Dr. Marthakis and received instructions to give Parker 0.2 mg of Clonidine and recheck his blood pressure in one hour. *Id.* Clonidine is used to immediately lower blood pressure, and was effective in this case as Parker's vital signs measured as normal one hour later. ECF 37-1 at 6.

Later that day, a signal 3000 was called after Parker was found face down in his cell covered in vomit and feces. ECF 37-1 at 6; ECF 37-2 at 67-70. Parker was staring off, mumbling, and unable to walk. *Id.* His blood pressure was within normal limits. *Id.* He was lifted onto a gurney and taken to the medical unit. *Id.* Dr. Marthakis evaluated Parker in the medical unit and noted he had a right-sided facial droop and altered mental state. *Id.* An ambulance was called, and Parker was taken to the Franciscan Health Michigan City Intensive Care Unit. *Id.* The hospital discovered Parker's sodium levels were well below normal at 92. ECF 37-1 at 7-8; ECF 37-3 at 3-29. He was diagnosed with severe hyponatremia, or low sodium levels in the blood. *Id.* It was noted his sodium levels could be secondary to his HCTZ medication. *Id.*

On August 26, 2021, Parker's sodium levels had improved from 92 to 105. ECF 37-1 at 8; ECF 37-3 at 32. Parker's sodium levels continued to improve until he was discharged from the hospital on September 2, 2021, with a sodium level of 133. ECF 37-1 at 8; ECF 37-4 at 19. The hospital physician discontinued the HCTZ and started Parker

5

on Norvasc while continuing his Lisinopril and Lopressor. ECF 37-1 at 8-9; ECF 37-4 at 20.

When Parker returned to ISP, Dr. Marthakis examined him and adopted the hospital physician's medication recommendations, concluding that discontinuing his HCTZ was appropriate given the recent acute issue of low sodium. ECF 37-1 at 9; ECF 37-2 at 62-66. Dr. Marthakis ordered that Parker now receive his medications under supervision due to the possibility he had mismanaged his medications prior to the August 24 incident. *Id.* She also ordered a urinalysis to test for sodium levels. *Id.* Parker was monitored closely by nursing staff, his vital signs were taken daily, and his labs were taken and sent out for testing. ECF 37-1 at 9. Parker continued to be scheduled for regular chronic care appointments and his sodium levels were tested when necessary. *Id.* at 12. Because neither party disputes these facts, the court accepts them as undisputed.

Dr. Marthakis argues she is entitled to summary judgment because she provided reasonable and constitutionally adequate medical care for Parker's hypertension at all times. ECF 38 at 6-11. Specifically, Dr. Marthakis attests it was reasonable and within the standard of care to treat Parker's hypertension with a combination of medications including HCTZ while regularly testing and monitoring his sodium levels, and the August 24 incident was not predictable or preventable. ECF 37-1 at 3-4, 12-13. She attests the August 24 incident was an acute medical emergency outside of any provider's control, and no additional treatment, medication, or testing would have made a difference in the outcome. *Id.* at 6-7, 12.

6

In his response, Parker argues Dr. Marthakis provided constitutionally inadequate medical care for several reasons.

First, Parker argues Dr. Marthakis provided constitutionally inadequate care by providing him HCTZ for his hypertension, which lowered his sodium levels and led to his August 24 hospitalization. ECF 47 at 2-3, 5-6. However, accepting as true that Parker's HCTZ medication contributed to his hospitalization, this does not show it was "plainly inappropriate" for Dr. Marthakis to provide him the medication. Specifically, it's undisputed Parker regularly received HCTZ for approximately three years prior to his August 24 hospitalization, and there's no evidence the medication was ineffective at treating his condition or caused his sodium levels to drop prior to August 24. *See Petties v. Carter*, 836 F.3d 722, 730-31 (7th Cir. 2016) ("courts look at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs."). Moreover, it's undisputed Parker's sodium levels were regularly monitored while he was receiving HCTZ, and his sodium levels regularly came back within the normal limits. Thus, while in hindsight Parker's HCTZ prescription may have contributed to his August 24 hospitalization, there's no evidence it was "plainly inappropriate" for Dr. Marthakis to provide him the medication before his hospitalization. *See Duckworth v. Ahmad*, 532 F.3d 675, 679-80 (7th Cir. 2008) (Deliberate indifference requires more than a showing that, with the benefit of hindsight, a different medical approach would have been preferable). Moreover, the fact that the hospital physician and Dr. Marthakis decided to discontinue Parker's HCTZ prescription *after* his hospitalization does not show it was plainly inappropriate

to provide him the medication *before* his hospitalization. *See id.*; *Petties*, 836 F.3d at 729 ("evidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim"); *Murphy v. Wexford Health Sources, Inc.*, No. 18-CV-1077-JPG-MAB, 2019 WL 6125200, at *3 (S. D. Ill. Nov. 19, 2019) ("Regardless of whether [the defendant] administered the *correct* treatment, his decisions were not of a kind prohibited by the Eighth Amendment. The fact that another physician—benefitted with hindsight and specialized knowledge—disagrees with a course of treatment, by itself, is insufficient to prove deliberate indifference to a serious medical need."). Thus, because there's no evidence that Dr. Marthakis' decision to provide Parker HCTZ prior to his August 24 hospitalization was "plainly inappropriate" such that it represented a "substantial departure from accepted professional judgment, practice, or standards," no reasonable jury could conclude that Dr. Marthakis violated Parker's Eighth Amendment rights by providing him HCTZ. *See Jackson*, 541 F.3d at 697.

Second, Parker argues that Dr. Marthakis' "failure to blood test and monitor plaintiff's sodium level beyond the medically required standard of care led to plaintiff's emergency hospitalization on 8/24/21." ECF 47 at 3. But it's undisputed Parker's sodium levels were monitored every few months between 2020 and 2021 and the results were consistently normal. Parker provides no evidence Dr. Marthakis' monitoring of his sodium levels was insufficient or fell below any applicable standard of care, and his belief that his sodium levels should have been monitored more regularly does not show deliberate indifference. *See Ciarpaglini*, 352 F.3d at 331 (the plaintiff's mere disagreement

8

with his physician does not show an Eighth Amendment violation); *Davis v. Gee*, No. 14-CV-617-WMC, 2017 WL 2880869, at *5 (W.D. Wis. July 6, 2017) (collecting cases rejecting pro se prisoners' efforts to self-diagnose).

Third, Parker argues Dr. Marthakis violated standards of care by prescribing him Clonidine on August 24 without first personally examining him. ECF 47 at 4. But Parker provides no evidence that Dr. Marthakis violated any standard of care by prescribing him Clonidine on August 24. Specifically, it's undisputed Dr. Marthakis prescribed Clonidine (a medication to quickly lower blood pressure) in response to a report from nursing staff that Parker's blood pressure levels were elevated. Parker provides no evidence that any standard of care prevents a physician from prescribing Clonidine without first conducting a personal examination. Moreover, there's no evidence that prescribing Clonidine at that time was "plainly inappropriate," as it's undisputed the Clonidine was effective at lowering Parker's blood pressure and there's no evidence the Clonidine had any negative impact on Parker's condition or caused or contributed to his lowered sodium levels.

Lastly, Parker argues Dr. Marthakis should have been aware he was experiencing side effects from his medication prior to his August 24 hospitalization due to a Healthcare Request Form ("HCRF") he submitted. ECF 47 at 4. Specifically, he cites to a HCRF in which he complained he'd been "throwing up all day." *Id.*; ECF 47-1 at 8. This HCRF does not contain a date, but health care staff responded to it on August 23, 2021, by listing Parker's vitals and noting he was sent to the hospital the next day. *Id.* Here, this HCRF does not provide any evidence Dr. Marthakis was deliberately

9

indifferent to Parker's condition. Specifically, there's no evidence Dr. Marthakis was ever aware of this HCRF, as the HCRF contains no indication it was ever sent to or seen by Dr. Marthakis. Regardless, even assuming Dr. Marthakis was aware of Parker's complaints of vomiting at some point prior to his August 24 hospitalization, Parker provides no evidence it was "plainly inappropriate" for Dr. Marthakis to keep him on his HCTZ medication based simply on the fact that he was experiencing vomiting.

Accordingly, Dr. Marthakis has provided evidence that she exercised her professional judgment to provide constitutionally adequate medical care for Parker's hypertension at all times, and that Parker's August 24 hospitalization was an acute incident which she could not have foreseen. In his response, Parker provides no evidence Dr. Marthakis' treatment was "plainly inappropriate" or substantially departed from accepted professional judgment. Thus, because there's no evidence by which a reasonable jury could conclude Dr. Marthakis violated Parker's Eighth Amendment rights, summary judgment is warranted in her favor.

For these reasons, the court:

(1) **GRANTS** Dr. Marthakis' motion for summary judgment (ECF 37); and

(2) **DIRECTS** the clerk to enter judgment in favor of Dr. Marthakis and against Tyrone Parker and to close this case.

SO ORDERED on February 12, 2025.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT